## INTERNATIONAL CONST. CORP. v. CHAPMAN CHEMICAL CO.

### Civ. No. 1918–T.

United States District Court
S. D. Florida, Tampa Division.
March 19, 1952.

Mabry, Reaves, Carlton, Anderson, Fields & Ward, Tampa, Fla., for plaintiff.

Foweler, White, Gillen, Yancey & Humkey, Tampa, Fla., for defendant.

DE VANE, Chief Judge.

This is a civil action to recover damages to eleven dwelling houses constructed for plaintiff by a building contractor, in the construction of which houses the contractor used a wood preservative, sold under the trade name "Penta", on furring strips, to which rock lath and plaster were applied, with the result that the preservative bled through the lath and plaster discoloring the interior walls.

Plaintiff is a Florida corporation engaged in the business of speculative dwelling house development and, in so far as this case is concerned, was sponsoring the building of a large number of houses on numerous building lots owned by plaintiff in a subdivision in Tampa, Florida, known as Clair-Mel Addition. The financing of these houses was arranged through the Federal Housing Administration; consequently, periodic FHA inspection of the houses as they were being constructed was made. The exterior walls of the houses were made of concrete blocks. It was required by the FHA that houses of such construction be furred between the exterior concrete block walls and the interior plaster walls with a furring strip that had been treated with a wood preservative. A furring strip is a strip of wood approximately 2" wide and 1" thick fastened vertically at 16" intervals to the inside of the concrete block walls. The lath used in such construction consisted of 16" x 32" pieces of plaster board, known as rock lath. It is fastened to the furring strip and the interior plaster is then applied to the rock lath. The effect of this is to allow an air space between the concrete block wall and the interior plaster wall; its purpose being to prevent outside moisture that might seep through the concrete blocks from coming into contact with and seeping through the plaster. The wood preservative is applied to the furring strips in order to prevent rotting and other deterioration.

In the course of the construction of the houses by the contractor the supply of the wood preservative then being used, a preservative known as Cell-cure, became exhausted and the contractor arranged with his building supply representative, Bay Builders Supply, to secure another satisfactory preservative. Acting upon this direction from the contractor, Bay Builders Supply secured a drum of Penta from Krauss Brothers Lumber Company, delivered it to the job and it was used on the eleven buildings in question.

The first three of these eleven buildings furred were promptly plastered and almost immediately the Penta preservative began to seep or bleed through the rock lath and the plaster and discolor the walls where the furring strips were behind them.

Complaint was immediately made by the contractor to Bay Builders Supply, who, in turn, made complaint to Krauss Brothers Lumber Company. Within two or three days after Krauss Brothers was notified of the bleeding it sent its representative, a Mr. Davis, to the job site to examine the three houses. After seeing them he contacted the defendant, who sent one of its chemists, a Mr. Shoemacker, to Tampa to examine the bleeding. Mr. Shoemacker, with Mr. Davis of Krauss Brothers, and Mr. Burford of Bay Builders Supply visited the job site on May 7, 1948. They there met the FHA inspector, the contractor and other representatives of plaintiff. Mr. Shoemacker took samples of the Penta, the furring strips, the rock lath and the discolored plaster for making a chemical analysis and recommendations as to what should be done about the matter. What further happened on this visit and subsequent to this date will be dealt with later in this Opinion as the testimony with reference thereto is in irreconcilable conflict and the outcome of this case depends upon this testimony.

Suffice it to say, at this point, that the remaining eight houses were plastered and the Penta preservative bled through the plaster in each house and was continuing to the date of the trial of this case to

bleed through to the substantial damage of plaintiff.

On June 9, 1950 plaintiff brought this suit against defendant for damages on account of the bleeding through of the Penta preservative setting forth five causes of action in its complaint, as follows:

1. Plaintiff seeks to recover on an implied warranty of fitness of the Penta for use on furring strips, alleging that plaintiff's contractor had relied on such implied warranty in purchasing and using the Penta.

2. Plaintiff seeks to recover on an express oral warranty by Krauss Brothers Lumber Company, as Agent for defendant, that Penta was as good as other preservatives for use on furring strips, alleging that plaintiff's contractor had relied on such recommendation.

3. Plaintiff seeks recovery on an expressed warranty by advertisement, alleging that defendant had advertised that Penta was fit for preserving lumber used in constructing dwelling houses and that wood treated with Penta preservative is "clean and non-bleeding, with no lasting odor", and that plaintiff's contractor relied on the judgment and skill of defendant in its statements advertising Penta.

4. Plaintiff seeks recovery on the ground of negligence, alleging that Penta was not fit to be used for the purpose for which it was manufactured.

5. Plaintiff seeks recovery on an express warranty made after the sale of the Penta, alleging that after the Penta had bled through the plaster on the first three houses, and after the remaining eight houses had been furred, but had not been plastered, a representative of defendant instructed that the remaining eight houses should be plastered at the end of three weeks; that by waiting three weeks the Penta would dry and would not bleed through; that these instructions were followed, but the Penta, nevertheless, bled through the plaster of the eight houses.

■ Defendant's first defense to this action is that of *res judicata*. The evidence in the case shows that plaintiff's contractor, Floyd Long, brought an action against defendant for damages suffered by him as the result of the bleeding of Penta through the plaster prior to the time he secured FHA approval for the delivery of the houses in question to plaintiff. Long recovered a judgment for $3,500 in the State Court. While the case was on appeal the judgment was settled and satisfied for $2,500. Defendant claims this suit of plaintiff's contractor constitutes a bar to plaintiff's action.

The court holds to the contrary. The parties agree and the evidence shows that the contractor recovered only such damages as he suffered as a result of the bleeding, prior to the time he secured FHA approval and delivered the buildings to plaintiff. Plaintiff seeks to recover only such damages as it has suffered since the buildings were accepted by the FHA and turned over to it. The causes of action are entirely separate and distinct and the suit of the contractor is no bar to this action of plaintiff.

■ Defendant's next defense to this action is one of *retraxit*. The evidence shows, and, in fact, the parties are in agreement, that plaintiff first sued Floyd Long, the contractor, for damages suffered by it. This suit was instituted prior to the time Floyd Long secured his judgment against defendant and was still pending when the judgment was paid and satisfied. Plaintiff promptly, thereafter, by stipulation with Floyd Long, dismissed the suit brought against him and instituted this suit against defendant.

The facts in this case disclose that while Floyd Long started out as the contractor, approved by FHA, to construct the houses for plaintiff, that at the time the eleven houses in question were being constructed he was in financial difficulties and was merely acting as Agent of plaintiff and was its contractor in name only, to meet the FHA regulations.

Without deciding whether plaintiff had a cause of action against Long beyond the right to recover advances it had made to Long to enable him to do the necessary work to place the buildings in condition for FHA approval, the court holds that under the situation as it existed at that time Long

was the proper party to bring suit to recover the expenditures made for conditioning the walls of the buildings to pass FHA inspection and that the dismissal of the suit brought by plaintiff against Long does not operate as a retraxit in this case.

█ Passing next to the causes of action set forth in the complaint, the causes stated in the first four counts will be considered together. They are each appropriately traversed by defendant. Without too much elaboration upon the evidence submitted in support of the facts alleged in each of these four counts the court finds and holds that plaintiff failed completely to carry the burden of proof upon each of these counts.

As to the first and second counts the evidence fails completely to prove that plaintiff's contractor or plaintiff's purchasing agent secured from or relied upon any warranty made by the representative of Krauss Brothers Lumber Company. In fact, the evidence shows that Krauss Brothers Lumber Company offered to sell to plaintiff's purchasing agent another preservative produced by defendant more fit for use for the purpose for which Penta was used, but because the cost was substantially more, plaintiff's purchasing agent purchased the cheaper product.

As to the third count plaintiff likewise completely failed to carry the burden of proof required of it to show liability of defendant for the purchase of the Penta preservative for the specific use for which it was applied. A copy of the "Express Warranty by Advertisement" issued by defendant was introduced in evidence (Plaintiff's Exhibit 6) and a careful analysis of the advertisement clearly discloses that Penta is recommended for use on exposed lumber, timber, etc., not to be painted or otherwise covered up and that Permatox W. R. is designed and manufactured for use on millwork, plywood, flooring and other wood products where it is intended that the surface of the wood is to be painted, varnished, lacquered or otherwise covered. The latter product was available to plaintiff's purchasing agent when Penta was purchased and the evidence shows that the purchasing agent used his own discretion in the selection of Penta.

The evidence in support of the fourth count is extremely sketchy and totally insufficient to warrant recovery. There is evidence in the case to the effect that Penta was frequently used on furring strips prior to the difficulty experienced in this case and that the use of Penta for this purpose had on a few occasions caused trouble of the same character. This evidence in no way helps plaintiff's case, in fact, it mitigates the case. Plaintiff's own evidence illustrates the point. It offered in evidence the chemical analysis made by the chemist of defendant (Plaintiff's Exhibit 4) who visited the project on May 7, 1948 and took samples of the furring strips, plaster, etc. This report discloses that the particular difficulty experienced in the use of Penta on this job grew out of the fact of the high absorption of the wood furring strips rather than the inherent character of the product.

█ The cause of action stated in the fifth count presents the only real issue posed by the evidence in the case. In the fifth count plaintiff alleges that after the Penta had bled through the plaster on the first three houses plastered and after the remaining eight houses had been furred, but before they had been plastered, representatives of defendant visited the job sites and stated that the remaining eight houses could be safely plastered after the furring strips were permitted to dry for three weeks; that this instruction was followed, but that Penta, nevertheless, bled through and is continuing to bleed through the plaster of these eight houses.

Three witnesses for plaintiff testified to this effect. While the testimony of the three witnesses is in conflict as to the date when this representation was made and upon other material facts they all testified that this representation was made and that it was made at or about the time Mr. Shoemacker, the chemist, visited the project. The three representatives of defendant that all these witnesses say were present and one or the other of which made the representation were Earl Long, Florida

sales representative, Thomas Foreshaw, District sales manager and also Long's immediate superior and chemist Shoemacker. The one disinterested witness for plaintiff who testified to this effect was the FHA inspector who claimed he was present when these three representatives of defendant visited the job site together. He testified that on this representation he required plaintiff and plaintiff's contractor to delay the plastering of the remaining eight houses for the required three weeks and thereafter permitted the plastering to be done and subsequently approved all eleven houses for acceptance by the FHA.

The date on which Mr. Shoemacker visited the job site is easily established by the evidence. It shows he visited it on May 7, 1948. Mr. Davis of Krauss Brothers Lumber Company, who sold the Penta to Bay Builders Supply for use on the project, testified that he and Jake Burford of Bay Builders Supply, who purchased the Penta from his Company, accompanied Mr. Shoemacker to the job site and that they there met the FHA inspector, Floyd B. Long, plaintiff's contractor, and other representatives of plaintiff. He testified that Earl Long and Thomas Foreshaw were not present at this time. He also testified that Shoemacker made no recommendations to the FHA inspector or to plaintiff or to any of his representatives in his, Mr. Davis' presence.

Shoemacker testified he made no recommendations; that he explained he was merely a chemist sent to the job site to secure certain samples to take back to Memphis, Tennessee for analysis.

Thomas Foreshaw testified that his only visits to the job site were on June 22 and 23, 1948 and that at that time all the eleven houses had been plastered. He testified further that the reason for his visits was to determine what paint should be used upon the plastered walls to enable them to pass FHA inspection and that he recommended the use of aluminum paint.

Earl Long testified that he visited the project for the first time on June 15, 1948 and that he went there again with Mr. Foreshaw on June 22 and 23, 1948 and that he was not at the job site on any other occasion.

Defendant introduced in evidence the daily reports of these witnesses disclosing their whereabouts for May and June, which supports the testimony of these witnesses as to their visits to the job site on the days stated above and at no other time during the period in controversy.

The first question that confronts the court in passing upon this conflict in the testimony arises out of the fact that in the trial of Floyd Long's case in the State Court, a jury found a verdict in favor of Floyd Long, based upon the same character of evidence. Does this verdict and judgment of the State Court control in this case? The court finds and holds that it does not control, for the reason it is strictly a factual issue and not a law question. The court, in passing upon the issues presented by the fifth count of the complaint is acting in the capacity of the jury, and the court is under the duty to arrive at a judgment that is supported by evidence. The court is unable to find in favor of plaintiff upon this irreconcilable conflict in the evidence. The weight of the evidence not only is not in favor of plaintiff but is overwhelmingly in favor of defendant.

The court, therefore, finds and holds that plaintiff has failed to carry the burden of proof the law imposes upon it to entitle it to recover on the fifth count.

In conformity with this Memorandum Decision a judgment will be entered in favor of defendant on all counts.